UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORRINE BAKER,

                                  Civil No. 2:15-CV-11629

         Petitioner,

   v.                                Honorable George Caram Steeh

SHAWN BREWER,

         Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR
## A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE
## A CERTIFICATE OF APPEALABILITY, AND DENYING
## LEAVE TO APPEAL *IN FORMA PAUPERIS*

Corrine Baker, ("Petitioner"), confined at the Huron Valley Women's

Correctional Facility in Ypsilanti, Michigan, filed a petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254, through her counsel David S.

Steingold, in which she challenges her conviction for second-degree

murder, M.C.L.A. 750.317; and second-degree child abuse, M.C.L.A.

750.136(b)(3).  For the reasons that follow, the petition for a writ of habeas

corpus is DENIED.

## I. Background

Petitioner's case arises out of the tragic death of her four year old son

at the hands of her boyfriend, Brandon Hayes.  This Court recites verbatim

the relevant facts regarding petitioner's conviction from the trial judge's lengthy opinion denying her post-conviction relief, since they are presumed correct on habeas review. *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> Over the course of 3–4 days in April, 2010, four-year-old [DC][1] was beaten to death by his mother's boyfriend, Brandon Hayes. The murder took place in an apartment in Argentine Township in southern Genesee County. Mr. Hayes went to trial and was convicted by a jury of multiple (10) offenses ranging from drug possession to 1st degree murder. Mr. Hayes did not appeal any of his convictions and he is currently serving life without parole on the murder conviction. His judgment of sentence is attached as Exhibit 1. Corrine Baker, the mother of [DC], was charged with 2nd degree murder, MCL 750.317; and 2nd degree child abuse, MCL 750.136b (3). In exchange for her testimony at the trial of Mr. Hayes, the prosecutor agreed that if she pled guilty to the charges, the sentence on 2nd degree murder would not exceed 13 years on the minimum to 30 years on the maximum. Ms. Baker accepted the plea agreement, testified as required, and was sentenced to 13 – 30 years. Michigan Department of Correction records show her earliest release date to be April 22, 2023 - approximately 5 years from now. Her judgment of sentence is attached as Exhibit 2. The victim in this case, [DC], is pictured below. [picture omitted] It is difficult to convey to others the manner in which [DC] was murdered. Several photographs are being submitted with this opinion. The scope of the injuries sustained by [D] is simply incomprehensible. Dr. Brian Hunter, M.D. is the Medical Examiner for Genesee County, Michigan. Dr. Hunter testified at the preliminary examination held for Brandon Hayes. His testimony was made admissible at the preliminary examination of Corrine Baker by stipulation of the parties.

---

[1] Because the victim was a minor at the time of the offense, the Court will refer to him by his initials only to preserve his privacy. *See* Fed. R. Civ. P. 5.2(a).

" ... this is the worse - - worse beating I've ever seen on any individual at any time during my forensic pathology career, and I've done over 2,500 autopsies. And just the sheer number of injuries is overwhelming, but when you look at sort of the distribution of some of the injuries which I think are thermal injuries, burns to the groin area and to the tip of the penis, it's, ah, probably the -- the pain is unimaginable, and especially in the back of the left hand where you have thermal injuries that are severe. It's as severe as any burn. I mean, when you look at burn victims, I see burn victims that have already gone to just charred ashes and that's just one step back." (Pages 192-193)

Dr. Hunter testified at length regarding the multiple injuries sustained by [D]. The photographs which have been included with this opinion visually confirm Dr. Hunter's testimony.

At the time defendant Baker was witnessing the beatings of her son, at the hands of her boyfriend (Brandon Hayes), Baker was on absconder status from a drug conviction and a probationary sentence in Livingston County, Michigan. As such, she was in no position to seek help from the police station, which was within walking distance from the apartment she shared with her kids and Brandon Hayes. Apparently, she also was in no position to knock on the doors of her neighbors and request them to call the police on [D]'s behalf. She did nothing. In fact, she hardly did anything during the four days of assaults upon her son. A relative of hers (who came to her apartment to buy drugs) was the individual who finally summoned police assistance. However, by then, it was too late.

* * *

From the time that the assault on [D] began until the time of his death (3-4 days) Corrine Baker deflected any suggestion that she take [D] to the hospital. Phone calls from her mother urging her to take [D] to the doctor were ignored by Ms. Baker. Arnold Hayes, the father of Brandon Hayes (the boyfriend), testified that

he raised the issue of seeking medical care for [D]'s hand with Corrine. He testified that he said "we should take him to emergency." Corrine Baker's response to him was "I can't. I can't really do that because they'll think that I did it." (July 19, 2010 Preliminary Exam Transcript at p 49).

Brandon Delong lived in close proximity to the apartment where Brandon Hayes and Corrine Baker were living at the time of the incident. Mr. Delong testified that on Saturday, April 10, 2010, at approximately 4-5 P.M., he saw Brandon Hayes walk past his home. Mr. Hayes was alone. He appeared to be headed towards the Sunoco Gas Station on Silver Lake Road. (PE Transcript, p 67).

Michael Delong testified that he knew Brandon Hayes and Corrine Baker. He testified that on "the Saturday before my nephew was rushed to the hospital he (Brandon Hayes) had walked up to the store." The store was at the Sunoco Gas Station. He testified that Hayes came back from the store approximately 15 minutes later. (PE Transcript, p 69-73)

The next witness to testify was Christine Baker, defendant's younger sister. She and several friends had come to Corrine Baker's apartment. When they knocked on the door Corrine came out of the apartment and closed the door behind her. Eventually, Christine and her friends were let into the apartment. She saw [D]'s face and said it looked "beat up". The rest of [D]'s body was covered with blankets. He appeared to be "sleeping."

She was asked "Did you say anything to your sister about [D]'s condition?"

Answer: "I told her that I was gonna call the cops."
Question: "What was her response when you said you were going to call the cops?"

Answer: "She shook her head no."

Question: "Did she say anything to you?"

- 4 -

Answer: "I'll get in trouble."

Question: "Did she say why she would get in trouble?"

Answer: "No, but I knew why."

Question: "Do you remember Corrine saying anything about being out of her district?"

Answer: "Yeah."

Question: "What did she say in regards to being out of her district?"

Answer: "I'm out of my district"

Question: "And what does that mean?"

Answer: "She's supposed to be in Livingston County and she was living in Genesee."

Question: "Did you know why she was supposed to be living in Livingston County and not Genesee?"

Answer: "She was on felony probation."

When Christine Baker, defendant's sister, left the apartment, she called Rick Calhoun, [D]'s grandfather. Shortly thereafter, the police arrived on the scene.

Cassandra Miller confirmed Christine Baker's account as to why Corrine Baker did not seek help from the police. Corrine Baker told her that she was "not in her district." (PE p 129- 130).

The next witness, Rodney Keen, was an uncle to Brandon Hayes. He had helped move Corrine Baker and Brandon Hayes into the apartment where these events occurred. Some of the furniture they were using came from Keen's house. Mr. Keen was at the Baker/Hayes apartment on the Friday when the assaults on [D] had just started. He does not remember which hand on

[D] was injured but, "his whole hand was all swelled up, big, blustery, red looking;" He said he told Corrine "the baby needs medical attention and they both told me that they could not do that because they had warrants for arrest and they had - - - didn't want Child Protective Services involved."

He testified that he confronted Corrine a second time about getting medical attention for [D] and on this occasion Brandon was not in the room where this conversation was held. Corrine did not ask him to do anything further. Later on, the issue of whether Corrine had a warrant was brought up again. He testified that he was told by her that she had a warrant for her arrest.

Angelo Panos, police officer with the Argentine Police Department was the last witness to testify at Ms. Baker's preliminary examination. While on duty he was approached by Richard Calhoun and he was told that he needed help at the Pinehurst Apartment complex because there was a child that was injured. He recalls the time being approximately 2:30 in the afternoon. Apartment complex is just a couple blocks away from the Police Department. Upon arrival at the apartment he was directed to a bedroom inside and saw a young boy laying on his back with a young lady sitting next to him. The young lady was Corrine Baker. He said the child appeared to be "just beat up all over". (PE p 177) He described his first look at [DC] as "devastatingly shocking." He acknowledged that he lost his professional demeanor when he turned and said to Corrine Baker "What the f*** kind of animals are you? Look at this boy. He's crucified."

*People v. Baker,* No. 10-27347-FC, pp. 1-4, 10-14 (Saginaw County Circuit Court, March 23, 2018)(ECF No. 21-2, PageID.1602-05, 1611-15).

Petitioner moved to withdraw her plea on the ground that trial counsel was ineffective. An evidentiary hearing was conducted on petitioner's ineffective assistance of counsel claims, after which the trial court denied

the motion to withdraw the plea. *People v. Baker,* No. 10-27347-FC (Saginaw County Circuit Court, June 25, 2013). Petitioner's conviction was affirmed on appeal. *People v. Baker,* No. 317395 (Mich. Ct. App. Sept. 4, 2013)(Ronayne Krause, J., would grant leave to appeal); *lv. den.* 496 Mich. 853 (2014).

Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, which was held in abeyance to permit her to return to the state courts to exhaust additional claims. *Baker v. Stewart*, No. 2:15-CV-11629, 2017 WL 2334937 (E.D. Mich. May 30, 2017).

Petitioner filed a post-conviction motion for relief from judgment, which was denied on the merits in a lengthy opinion. *People v. Baker,* No. 10-27347-FC (Saginaw County Circuit Court, Mar. 23, 2018)(ECF No. 21-2). The Michigan appellate courts denied petitioner leave to appeal. *People v. Baker,* No. 343321 (Mich. Ct. App. Oct. 2, 2018); *lv. den.* 503 Mich. 955, 923 N.W.2d 243 (2019).

This Court subsequently reopened the case and permitted petitioner to amend her petition. The petition was again held in abeyance during the pendency of petitioner's request for a review of her criminal conviction by the Michigan Attorney General Office's Conviction Integrity Unit. (CIU).

The case was reopened following completion of that review. *Baker v.*

*Brewer*, No. 2:15-CV-11629, 2020 WL 1952520 (E.D. Mich. Apr. 23, 2020).

Petitioner in her amended petition seeks habeas relief on the

following grounds:

I.  Corrine Baker's plea was not made knowingly, understandably, and voluntarily due to counsel's ineffectiveness, in violation of Ms. Baker's due process rights.

II. Corrine Baker's due process rights were violated when the trial court accepted a guilty plea without a sufficient finding of guilt.

## II. Standard of Review

28 U.S.C. § 2254(d) provides that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal

law if the state court arrives at a conclusion opposite to that reached by the

- 8 -

Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

## III. Discussion

### A. Claim # 1. The ineffective assistance of counsel/involuntary plea claim.

Petitioner first contends that her guilty plea was not knowingly, voluntarily, or intelligently made because she was denied the effective assistance of counsel.

Initially, the Court observes that petitioner has no federal constitutional right to withdraw her guilty plea. *See Hynes v. Birkett,* 526 F. App'x 515, 521 (6th Cir. 2013). Unless a petitioner's guilty plea otherwise violated a clearly-established constitutional right, whether to allow the withdrawal of a habeas petitioner's plea is discretionary with the state trial court. *See Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 748 (E.D. Mich.

2005).  Moreover, "[i]t is well-settled that post-sentencing 'buyer's remorse' is not a valid basis" to set aside an otherwise valid guilty plea. *Meek v. Bergh*, 526 F. App'x 530, 536 (6th Cir. 2013)(internal quotations omitted).

A guilty plea that is entered in state court must be voluntarily and intelligently made. *See Shanks,* 387 F. Supp. 2d at 749; *Doyle v. Scutt,* 347 F. Supp. 2d 474, 482 (E.D. Mich. 2004)(both citing *Boykin v. Alabama,* 395 U.S. 238, 242 (1969)).  In order for a plea of guilty to be voluntarily and intelligently made, the defendant must be aware of the "relevant circumstances and likely consequences" of his or her plea. *Hart v. Marion Correctional Institution*, 927 F.2d 256, 257 (6th Cir. 1991).  The defendant must also be aware of the maximum sentence that can be imposed for the crime for which he or she is pleading guilty. *King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994).  When a petitioner brings a federal habeas petition challenging his or her plea of guilty, the state generally satisfies its burden by producing a transcript of the state court proceedings showing that the plea was made voluntarily. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).  The factual findings of a state court that the guilty plea was properly made are generally accorded a presumption of correctness.  The petitioner must overcome a heavy burden if the federal court is to overturn these findings by the state court. *Id.*

It is only when the consensual character of a guilty plea is called into question that the validity of a guilty plea may be impaired. *Mabry v. Johnson*, 467 U.S. 504, 508-09 (1984). A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him or her by the court, prosecutor, or his or her own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (i.e. bribes). *Id.* Federal and state courts will uphold a state court guilty plea if the circumstances demonstrate that the defendant understood the nature and consequences of the charges and voluntarily chose to plead guilty. *See Thirkield v. Pitcher,* 199 F. Supp. 2d 637, 652 (E.D. Mich. 2002).

Petitioner's plea was voluntary and not coerced. Petitioner was advised of the charges against her and the possible penalties. Petitioner was advised of the plea and sentencing agreement, in which she would plea guilty as charged and in exchange for her truthful testimony against Hayes, the prosecution would recommend a sentence of 13 to 30 years on the second-degree murder charge. (ECF No. 6-6, PageID.440-42); *see also* 8/30/11 Plea Agreement Form, which Baker signed on August 30,

2011 and which is submitted as part of the Rule 5 material.  Under oath, the trial court asked petitioner if she understood the plea and she replied affirmatively; she had no questions about the plea agreement or its consequences.  Petitioner acknowledged that she had reviewed the advice of rights form with her counsel and all of the rights she would be giving up by pleading guilty. (*Id.,* PageID.441-45).  Petitioner was advised of the rights that she would waive by pleading guilty. (*Id.*, PageID.445-47).  The trial court again read the charges to petitioner and she indicated she understood; when asked how she wanted to plead, petitioner replied "[g]uilty."  When asked whether she understood that by pleading guilty she would be giving up all of the rights she would have at trial, petitioner answered that she did.  Petitioner told the judge that it was her choice to plead guilty.  Petitioner denied that anyone threatened her or used undue influence or force her to plea.  Petitioner denied that there were any promises used to get her to plea. The trial court asked petitioner if she was pleading guilty "freely and voluntarily" and she replied yes. (*Id.*, PageID.447-50).  The transcript clearly shows  that the plea was voluntary.

Petitioner now contends that it was counsel's ineffectiveness that convinced her to plead guilty.  Petitioner alleges she was coerced into pleading guilty by her defense counsel's threat that she could be sentenced

to up to life in prison or that the judge could at least exceed the sentencing guidelines if she went to trial and lost.

To show that she was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*.  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced her defense. *Id*.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

In order to satisfy the prejudice requirement for an ineffective assistance of counsel claim in the context of a guilty plea, the defendant must show that there is a reasonable probability that, but for counsel's

errors, he or she would not have pleaded guilty, but would have insisted on going to trial. *Premo v. Moore,* 562 U.S. 115, 129 (2011)(citing *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)). An assessment of whether a defendant would have gone to trial but for counsel's errors "will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill,* 474 U.S. at 59. The Sixth Circuit has interpreted *Hill* to require a federal habeas court to always analyze the substance of the habeas petitioner's underlying claim or defense to determine whether but for counsel's error, petitioner would likely have gone to trial instead of pleading guilty. *See Maples v. Stegall,* 340 F.3d 433, 440 (6th Cir. 2003). The petitioner must therefore show a reasonable probability that but for counsel's errors, he or she would not have pleaded guilty, because there would have been a reasonable chance that he or she would have been acquitted had he or she insisted on going to trial. *See Garrison v. Elo,* 156 F. Supp. 2d 815, 829 (E.D. Mich. 2001). The test of whether a defendant would have not pleaded guilty if he or she had received different advice from counsel "is objective, not subjective and 'to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Pilla v. U.S.*,

668 F.3d 368, 373 (6th Cir. 2012)(quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).

Petitioner is not entitled to habeas relief on her ineffective assistance of counsel claim, because she failed to show a reasonable probability that she could have prevailed had she insisted on going to trial, or that she would have received a lesser sentence than she did by pleading guilty. *See Shanks v. Wolfenbarger,* 387 F. Supp. 2d at 750.

Petitioner's claim that her counsel coerced her into pleading guilty is defeated by the fact that petitioner stated on the record at the plea hearing that no threats or coercion had been made to get her to plead guilty. Petitioner's bare claim that she was coerced into pleading guilty is insufficient to overcome the presumption of verity which attaches to petitioner's statements during the plea colloquy, in which she denied that any threats had been used to get her to enter her plea. *See Shanks v. Wolfenbarger,* 387 F. Supp. 2d at 750-51.

Moreover, even if counsel advised petitioner that she could receive up to life in prison or at least an above the guidelines range sentence if convicted after a trial, "accurate information regarding the possible ramifications of proceeding to trial cannot be construed as coercive. Rather, it is exactly the kind of accurate information regarding sentencing

exposure which the defendant must have in order to make an informed decision about whether to accept a plea offer." *U.S. v. Green,* 388 F.3d 918, 923 (6th Cir. 2004).  Contrary to counsel's advice being misleading, the information in fact was correct.  Second-degree murder is punishable by up to life in prison.  The trial judge, in denying petitioner's ineffective assistance of counsel claim on post-conviction review, noted that trial counsel negotiated a sentencing agreement of 13-30 years.  The judge observed that this was below the sentencing guidelines range of 22.5 to 37.5 years and a maximum of life in prison.[2]  The judge concluded that in light of the egregious facts of this case, "an argument could be made that [petitioner] received a much better result than she deserved." (ECF No. 21-2, PageID.1615).  It is clear from the judge's comments that had petitioner gone to trial and lost, she could have faced a sentence of life in prison or at least one at the top of the sentencing guidelines.

Petitioner also claims that trial counsel pressured her into pleading guilty by showing her gruesome photographs of her deceased son which she claims would have been inadmissible at trial.

---

[2] Michigan's Sentencing Guidelines, unlike the federal sentencing guidelines, only provide for a minimum sentence; the maximum is determined by statute. *See, e.g., Montes v. Trombley*, 599 F.3d 490, 496 (6th Cir. 2010).

Petitioner offers no argument to support her claim that these photographs would have been inadmissible. Reviewing potential evidence with a client during trial preparation and possible plea negotiations is one of a defense counsel's duties.

Petitioner further claims that although she did not want to plead guilty, she wanted to testify against Mr. Hayes in his separate trial. Petitioner claims that she pleaded guilty only because her trial attorney falsely informed her that the only way she could testify against Mr. Hayes is if she pleaded guilty first.

Petitioner is correct that neither Michigan nor federal law would prevent her from testifying against Mr. Hayes without pleading guilty. However, had petitioner testified against Mr. Hayes at his trial without pleading guilty, there is a very real risk that she could have given extremely damaging information which could then have been used against her at her own trial. Counsel was not ineffective for not advising his client that she could testify against her co-defendant at his trial and still go to trial in her own case, as this strategy would likely have backfired. *See Brent v. State*, 916 S.W.2d 34, 40 (Tex. App. 1995)(Defendant had no right to testify at his own murder trial free from impeachment, and defendant's counsel was thus not ineffective for not advising defendant not to testify at trial of

codefendant because of the danger that State might impeach the defendant in his own trial with his testimony from codefendant's trial).

Petitioner next contends that trial counsel misled her into believing that she would receive good time credits if she pleaded guilty when such credits, in fact, are no longer available in Michigan.  Under the Truth in Sentencing Law, a defendant is now required to serve his or her minimum sentence.

Petitioner is not entitled to relief on this claim because she "has alleged no special circumstances indicating that [she] might have placed particular emphasis on [good-time] credit in deciding whether or not to plead guilty, particularly when she was looking at significantly more prison time after a trial. *See Ewing v. United States*, 651 F. App'x 405, 411 (6th Cir. 2016).

Petitioner also argues that she was coerced into pleading guilty by virtue of the fact that counsel failed to attempt to obtain a change of venue due to adverse pre-trial publicity, even though her co-defendant was successful in obtaining a change of venue to St. Clair County based on the negative media coverage of the case in Genesee County.  Counsel did file a motion for change of venue but never argued it.  Petitioner's claim that her plea was involuntary because counsel was ineffective for failing to seek

a change of venue is without merit.  Petitioner failed to establish prejudice because even if a change of venue had been granted, petitioner failed to show any reasonable probability that the outcome of her case would have been any different in a different venue, given the "overwhelming evidence against [petitioner]." *See Braun v. Ward*, 190 F.3d 1181, 1189 (10th Cir. 1999).

Petitioner next contends that trial counsel gave her inaccurate or misleading advice about available defenses.

Petitioner first claims that trial counsel was ineffective for failing to explore a duress defense.

At the time of petitioner's trial, duress was not a defense to murder in Michigan. *See People v. Dittis,* 157 Mich. App. 38, 40, 403 N.W.2d 94 (1987); *See also Gimotty v. Elo,* 40 F. App'x 29, 32 (6th Cir. 2002). Recently, the Michigan Supreme Court modified that rule and held that duress can be a defense to felony-murder if duress is a defense to the underlying felony. *People v. Reichard*, 505 Mich. 81, 96, 949 N.W.2d 64, 73 (2020).  However, the Michigan Supreme Court in *Reichard* clarified that a "defendant's duress defense to the underlying felony would only prevent the enhancement of second-degree murder to first-degree murder." *Id.* Duress is still not a defense to second-degree murder in Michigan. *Id.,* at

95-96. Because petitioner was charged with, and convicted of, second-degree murder, duress was an unavailable defense in this case.

Petitioner next contends that trial counsel failed to consider pursuing a Battered Women's Syndrome (BWS) defense.

"Michigan law does not permit a defendant to plead battered spouse syndrome as a freestanding defense but rather as part of a self-defense claim." *Shimel v. Warren*, 838 F.3d 685, 699 (6th Cir. 2016)(citing *Seaman v. Washington*, 506 F. App'x 349, 360 (6th Cir. 2012)(citing *People v. Christel*, 449 Mich. 578, 537 N.W.2d 194, 202 (1995)). Had petitioner used deadly force against Mr. Hayes to repel his attack against her or her child, she may have been able to assert a BWS defense but she could not use this defense under Michigan law to defend her failure to protect her child from the extensive and severe abuse at Mr. Hayes' hands.

Buttressing counsel's decision to forego a Battered Women's Syndrome Defense is that petitioner's counsel and co-counsel each spoke with an expert on domestic violence, Holly Rosen and Erica Schmittdiel. Both experts informed counsel that BWS was not a valid defense to this case because "that defense is outdated, and when used, it is to explain why a domestic violence victim may kill their abuser in a kill-or-be-killed situation." (6/22/20 Declaration of Holly Rosen, ECF No. 26-1,

PageID.3227, ¶ 9; 6/22/20 Declaration of Erica Schmittdiel, ECF No. 26-2, PageID.3237, ¶ 9.  Rosen and Schmittdiel informed counsel "that a jury would most likely not be compassionate and may not acquit Ms. Baker" due to several adverse factors, including:

- Domestic violence is not, and was not at the time, widely understood.

- Mothers are held to a higher standard than fathers or non-biological parental figures.

- The police report from Ms. Baker's case indicated that visitors came to the home, asked what was wrong with her son, and she said nothing to indicate that he had been harmed.

- The general public often responds to victims of domestic violence with less compassion, and more judgement [sic], when they are known to use illegal drugs.

(6/22/20 Declaration of Holly Rosen, ECF No. 26-1, PageID.3227–28, ¶ 10; 6/22/20 Declaration of Erica Schmittdiel, ECF No. 26-2, PageID.3237–38, ¶ 10.)

Finally, Rosen and Schmittdiel noted that while it was not in their area of expertise to advise someone whether to plead guilty, in this case, if asked for their opinions, both stated "it is possible I agreed a plea might be a serious option for [Baker] to consider, given reasons stated in Declaration #10." (6/22/20 Declaration of Holly Rosen, ECF No. 26-1, PageID.3231, ¶ 16; 6/22/20 Declaration of Erica Schmittdiel, ECF No. 26-2, PageID.3241, ¶ 16).  Although each expert believed that a plea to a child abuse charge

rather than second-degree murder was more appropriate, their prior statements and reservations about the case remained. Their affidavits support counsel's decision to seek a plea bargain rather than raise a BWS defense.

Petitioner thus does not identify any viable defense she had. Moreover, the favorable plea bargain that petitioner received weighs against a finding that counsel was ineffective for advising a guilty plea. *See Plumaj v. Booker*, 629 F. App'x 662, 667 (6th Cir. 2015)(citing *Pilla*, 668 F.3d at 373; *Haddad v. United States*, 486 F. App'x 517, 522 (6th Cir. 2012)). Furthermore, "the Supreme Court has never held that the benefits of a plea agreement alone cannot suffice to answer the prejudice inquiry, namely whether 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Id.* (*quoting Hill v. Lockhart*, 474 U.S. at 59).

Petitioner received a very favorable sentence in this case. She risks facing decades in prison if her plea is vacated, she goes to trial, and loses. Petitioner's earliest release date is April 22, 2023, only two years from now. "The nature of relief secured by a successful collateral challenge to a guilty plea—an opportunity to withdraw the plea and proceed to trial—imposes its own significant limiting principle: Those who collaterally attack their guilty

pleas lose the benefit of the bargain obtained as a result of the plea. Thus, a different calculus informs whether it is wise to challenge a guilty plea in a habeas proceeding because, ultimately, the challenge may result in a *less favorable* outcome for the defendant, whereas a collateral challenge to a conviction obtained after a jury trial has no similar downside potential." *Padilla v. Kentucky*, 559 U.S. at 372–73 (emphasis original). Were this Court to grant the petitioner habeas relief and ordered that her plea be vacated, petitioner would be facing the possibility of up to life in prison from a judge who has already indicated his negative opinion of petitioner and this case. The Court rejects petitioner's first claim.

**B. Claim # 2. The insufficient factual basis claim.**

Petitioner next claims that there was an insufficient factual basis to support her guilty plea.

A habeas petitioner's claim that there was an insufficient factual basis for a guilty plea is non-cognizable on habeas review. *See Watkins v. Lafler*, 517 F. App'x 488, 500 (6th Cir. 2013). There is no federal constitutional requirement that a factual basis be established to support a guilty plea. *Id.* While M.C.R. 6.302(D)(1) requires that a factual basis must be elicited from a defendant prior to accepting his or her guilty plea, the failure of a Michigan trial court to comply this rule does not establish a basis for

habeas relief. *Id.*  "[T]he requirement that a sentencing court must satisfy itself that a sufficient factual basis supports the guilty plea is not a requirement of the Constitution, but rather a requirement created by rules and statutes." *United States v. Tunning,* 69 F.3d 107, 111 (6th Cir.1995). The lack of a sufficient factual basis would not render petitioner's plea invalid.

To the extent that petitioner claims that there was insufficient evidence to convict her of second-degree murder, her guilty plea waives review of such a claim.

An unconditional guilty plea constitutes a waiver of all pre-plea non-jurisdictional constitutional deprivations. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  By entering a guilty plea, petitioner has waived her right to challenge the sufficiency of the evidence to convict her of this charge. *See United States v. Manni*, 810 F.2d 80, 84 (6th Cir. 1987); *see also U.S. v. Hawkins*, 8 F. App'x 332, 334 (6th Cir. 2001).

## IV.  Conclusion

The Court will deny the petition for a writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To

demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because she failed to make a substantial showing of the denial of a federal constitutional right. *Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001).  The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of Habeas Corpus is **DENIED WITH PREJUDICE**.

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED**.

IT IS FURTHER ORDERED that petitioner will be **DENIED** leave to appeal *in forma pauperis.*

Dated: May 5, 2021

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on May 5, 2021, by electronic and/or ordinary mail.

s/Leanne Hosking
Deputy Clerk